**Roderick L. SMITH, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–94–1199.

Court of Criminal Appeals of Oklahoma.

Oct. 1, 1996.

Publication Ordered Jan. 13, 1997 of
Order Granting Rehearing
Dec. 6, 1996.

Kenneth C. Watson, Vernon Smythe, Oklahoma City, for Appellant at trial.

Lee Ann Jones Peters, Oklahoma Indigent Defense System, Norman, for Appellant on appeal.

Robert H. Macy, Fern L. Smith, Oklahoma County Courthouse, Oklahoma City, for the State at trial.

W.A. Drew Edmondson, Attorney General, Robert L. Whittaker, Assistant Attorney General, Oklahoma City, for Appellee on appeal.

STRUBHAR, Judge:

Appellant, Roderick L. Smith, was charged with five counts of First Degree Murder in violation of 21 O.S.1991, § 701.7, in the District Court of Oklahoma County, Case No. CF–93–3968. The case was tried before the Honorable Richard W. Freeman. The State filed a Bill of Particulars alleging five aggravating circumstances. The jury found Appellant guilty of the crimes charged and found all five alleged aggravating circumstances to exist.[1] Appellant was sentenced to death on all counts. From this Judgment and Sentence Appellant has perfected his appeal.

---

1. The jury found the following aggravating circumstances to exist:

1) The defendant was previously convicted of a felony involving the use or threat of violence to the person;

2) The defendant knowingly created a great risk of death to more than one person;

3) The murders were especially heinous, atrocious or cruel;

4) The murders were committed for the purpose of avoiding or preventing a lawful arrest or prosecution (except as to Jennifer Smith); and

5) The existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society.

## FACTS

Appellant was married to Jennifer Smith, who had four children from a prior relationship: ten year old Shemeka Carter, nine year old Glen Carter, Jr., seven year old Ladarian Carter, and six year old Kanesha Carter. The children lived with Appellant and Jennifer.

On the morning of June 28, 1993, Jennifer's mother called the police and asked them to check her daughter's house. She had not seen or heard from Jennifer since June 18, 1993. When Officer Peterson arrived at the residence where Jennifer and Appellant lived, the house appeared to be secured and no one answered the doors. Because he noticed an odor of decaying flesh and a large number of flies around the windows, he contacted his supervisor, Lieutenant Wayne Owen, who came to the address. Owen and Peterson entered the house through a window. Inside, they discovered a dead woman in one closet and a dead child in another. They called the homicide division of the Oklahoma City Police Department and secured the house. Once homicide detectives arrived, the rest of the house was searched. The bodies of three more children were found, two in closets and the third under a bed. The bodies were determined to be those of Jennifer Smith and her four children. They were determined to have been dead for at least two to three days and up to as long as two weeks or more.

The afternoon of that same day, June 28, 1993, Appellant walked into the Oklahoma County Sheriff's Office. He was turned over to the Oklahoma City Police and placed under arrest. During a custodial interrogation, Appellant told Detectives Bemo and Cook that he had been laid off his job as head janitor at Washington Irving Elementary School because the company that he worked for had lost its contract. According to Appellant, when he told his wife this news a fight ensued. At one point Jennifer grabbed a knife and he took the knife from her and stuck her with it. When the boys came to their mother's defense, he stuck them with the knife as well. Although Appellant admitted that he "got" the girls also, he could not

remember any details. Appellant told the police where he placed each of the bodies.

## PRETRIAL ISSUES

■ Appellant first contends that the procedures utilized in Oklahoma to determine a person's competency to stand trial are less protective than those accepted as sufficient by the United States Supreme Court and therefore do not meet federal constitutional standards of due process. As Appellant points out, it is well settled that the Due Process Clause prohibits the criminal prosecution of a defendant who is not competent to stand trial. *See Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). In making such determination, the Supreme Court has held that "it is not enough for the district judge to find that 'the defendant [is] oriented to time and place and [has] some recollection of events,'...." *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824, 825 (1960). Rather, it is incumbent upon the trial court to determine "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Id.*

These same principles are reflected in Oklahoma's law. Title 22 O.S.1991, § 1175.1 defines competency as "the present ability of a person arrested for or charged with a crime to understand the nature of the charges and proceedings brought against him, and to ... effectively and rationally assist in his defense." This language has been interpreted to proffer a two-part test requiring first that an accused have sufficient ability to consult with his or her attorney and second, that an accused have a "rational and actual understanding of the proceedings against him." *Middaugh v. State,* 767 P.2d 432, 434 (Okl.Cr.1988). This Court has found little or no difference between the effective meaning of Oklahoma's law and the language used by the Supreme Court in *Dusky.* "In both cases, the accused is required to understand the charges against him, the implications of the charges against him and be able

to *effectively* assist his attorney in defense of the charges against him." *Lambert v. State,* 888 P.2d 494, 498 (Okl.Cr.1994). *See also Perry v. State,* 893 P.2d 521, 526–27 (Okl.Cr.1995). Appellant has not persuaded us otherwise.

■ As part of his first proposition, Appellant contends that 22 O.S.1991, § 1175.4 is unconstitutional insofar as it presumes every defendant competent and requires the person whose competency is at issue to prove incompetence by clear and convincing evidence at the post-examination competency hearing. The United States Supreme Court recently addressed this issue in *Cooper v. Oklahoma,* —— U.S. ——, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996), wherein it held that the clear and convincing burden of proof does violate due process. "Oklahoma's practice of requiring the defendant to prove incompetence by clear and convincing evidence imposes a significant risk of an erroneous determination that the defendant is incompetent." *Id.* —— U.S. at ——, 116 S.Ct. at 1381.

On July 20, 1993, when defense counsel argued his motion for a competency examination, he advised the trial court that during their first few meetings, Appellant had not seemed to understand his questions about what had happened and had not known how to respond. Based upon this, defense counsel stated that he had serious questions about Appellant's ability to aid in his defense. The trial court granted the request for a competency examination. Subsequently, on September 3, 1993, at the post-examination competency hearing, neither the defense nor the State called any witnesses to testify. Rather, both parties stipulated to the admission of a letter from Dr. King, the expert who had performed Appellant's psychiatric evaluation. Dr. King concluded in the letter that, "Mr. Smith is able to communicate rationally with his attorney and to deal adequately with his defense." [2] Defense counsel stated that while he did not necessarily agree with Dr. King's findings, he was not prepared to contest any of her findings because no funds were available for him to secure a second opinion from another expert. Signifi-

cantly, defense counsel did not advise the trial court that he was still having problems communicating with Appellant.

Based upon the evidence presented at the post-examination competency hearing, the trial court found Appellant competent to stand trial. After making this ruling, the trial court indicated that if evidence came to light demonstrating that Appellant was incompetent to stand trial such would be considered at that time. There is no indication from the record that such evidence was ever presented. Indeed, there is evidence to the contrary. Prior to the commencement of voir dire on October 18, 1994, Appellant, himself, argued two motions to the trial court. Appellant first stated that he was concerned about facial expressions the prosecutors would make to the jury. Second, Appellant had previously filed a motion to have his attorney removed from the case because he felt that defense counsel was not doing his job. At the motion hearing Appellant stated that he had subsequently changed his mind. Again, on October 20, 1994, Appellant argued another motion to the trial court regarding racial disparity of the jury. He was concerned because eleven of the twelve jurors were white. While these motions were not argued with the skill of a trial attorney, they were communicated clearly enough for the trial court to understand Appellant's concerns. Further, although these motions were without merit, they were not so preposterous as to have been inappropriately raised. These instances show that Appellant not only understood the proceedings against him, but he also was a very active participant in his own defense.

Appellant argues that the record reflects he did not display a rational and factual understanding of the proceedings because he could not distinguish reality from fantasy. This is based upon the notation of Dr. King, that Appellant was "largely concerned with having his mother visit him and with 'getting the truth' so he can get out of jail." [3] That Appellant could have thought it possible that he would be able to go home after having confessed to the crime is said to demonstrate

---

2. Original Record at 31.

3. Original Record at 35.

his inability to intellectually understand the proceedings and separate fact from fiction. This argument would seem more plausible if Appellant had not tried to back away from his original confession. However, instead of adhering to his original confession, Appellant started telling alternative stories about what had happened, ranging from him being poisoned to organized accounts of other persons having committed the acts. Appellant's statement to Dr. King can be found to have been based upon a very rational understanding of the proceedings and his hope that his later explanations would be believed over his original confession.

Despite Appellant's assertion to the contrary, we find the record supports a finding that he knew the nature of the proceedings and possessed a rational understanding of them. The defense failed to prove, even by a preponderance of the evidence, that Appellant was incompetent to stand trial. Because the evidence in this case so strongly supports the finding that Appellant was competent, we need not remand this case for a new determination on this issue.

■ Appellant complains in his second proposition that it was error for the trial court to dismiss for cause prospective juror Mario Tello. Initially, when asked about whether he could give equal consideration to each of the three possible punishments for First Degree Murder, Tello replied that he could give honest consideration to each of these choices. However, because he displayed some hesitation in answering the question, the trial court decided to question him further in this respect. Although Tello maintained throughout that he could give equal consideration to all three choices, he also consistently stated that he did not know if he could ever impose the death penalty. Based upon this, Tello was dismissed for cause.

In *Wainwright v. Witt,* 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841, 851–52 (1985), the United States Supreme Court reaffirmed the standard for determining when

a prospective juror may properly be excluded for cause based upon his or her views on capital punishment. "That standard is whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'"[4] The Court in *Wainwright* went on to note that a juror's bias need not be proved with "unmistakable clarity."

> This is because determinations of juror bias cannot be reduced to question-and-answer sessions which obtain results in the manner of a catechism. What common sense should have realized experience has proved: many veniremen simply cannot be asked enough questions to reach the point where their bias has been made 'unmistakably clear'; these veniremen may not know how they will react when faced with imposing the death sentence, or may be unable to articulate, or may wish to hide their true feelings. Despite this lack of clarity in the printed record, however, there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law. . . . [T]his [in part] is why deference must be paid to the trial judge who sees and hears the juror.

*Id.* 469 U.S. at 425–26, 105 S.Ct. at 852–53, 83 L.Ed.2d at 852–53.

Appellant argues that Tello's responses were not sufficient to warrant his removal for cause because Tello had simply expressed that he might be affected by the awesome responsibility of considering the death penalty. Although Tello's bias is not "unmistakably clear," the record reflects a greater concern than this. After extensive questioning by the trial court, prosecutor and defense counsel, the trial court believed that although Tello had said he could consider the death penalty he did not really mean it.[5] Tello's indication that he could not vote for the death penalty regardless of the circumstances, supports a finding that his views would prevent or substantially impair the

---

4. This standard was first established in *Adams v. Texas,* 448 U.S. 38, 45, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581, 589 (1980).

5. Trial Transcript, Vol. II, at 111–12. (Even defense counsel did not object to this dismissal.)

performance of his duties as a juror in accordance with his instructions and his oath. Accordingly, we find that the trial court's dismissal of prospective juror Tello for cause was not violative of Appellant's Sixth and Fourteenth Amendment rights.

■ Shortly after the bodies of the victims were discovered on June 28, 1993, Appellant walked into the Oklahoma County Sheriff's Department appearing to be disoriented. After his identity was discovered, he was taken to the Oklahoma City Police Department where he was arrested and taken into an interrogation room for questioning. This interrogation was videotaped and Appellant's confessions were admitted into evidence at trial. Appellant contends in this third proposition that the trial court erred in failing to suppress his confessions because he confessed without first having knowingly and intelligently waived his *Miranda* [6] rights.

■ In *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410, 421 (1986), the Supreme Court addressed effective waiver of *Miranda* rights finding that:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*See also Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Further, where the admissibility of a statement or confession is challenged, the burden is upon the State to show by a preponderance of the evidence that it was voluntary.

*Young v. State*, 670 P.2d 591, 594 (Okl.Cr. 1983).

Prior to the admission of Appellant's confession a *Jackson v. Denno* [7] hearing was held on defense counsel's motion to suppress. Therein, it was established that before he was questioned Appellant was read the *Miranda* warnings. Appellant initially appeared unresponsive and indicated that he did not understand his rights. The detective went over the rights again, explaining each right individually, and again asked Appellant if he understood them. Appellant stated that he believed he did. When the detectives proceeded with questioning Appellant talked about having been in an accident and claimed that he could not remember some things. At one point Detective Bemo told Appellant that he had spoken with Appellant's mother and she had said that there was not anything wrong with Appellant that morning. After this comment, Appellant's behavior changed. He no longer appeared to be disoriented and he responded well to the detective's questions. It was after this that Appellant confessed to having killed Jennifer and the children.[8] The following day, the detectives met again with Appellant at his request. Again, the detectives read him his *Miranda* rights prior to questioning him. Appellant was hesitant but indicated that he understood his rights. During this interview Appellant again talked about the death of his wife and her children.[9]

The trial court, after hearing the testimony and viewing the video tapes, found that Appellant appeared to have understood the *Miranda* warnings. The trial court found it significant that Appellant acted more alert and responded more normally after the detectives told him that they had spoken with his mother who told them that there was nothing wrong with him. The trial court noted that while Appellant was not a genius and appeared to have been under stress, he seemed able to make a conscious, voluntary

---

6. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

7. *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

8. Appellant's statements were all tape recorded.

9. A third interview was attempted on June 30, 1993, but on this date Appellant, after he was read his *Miranda* rights, informed authorities that he had an attorney and the interview was appropriately terminated.

decision to speak. The totality of the circumstances surrounding the interrogation supports the trial court's ruling that Appellant's decision to speak with the detectives was uncoerced and made with the requisite understanding of his constitutional rights. Accordingly, this proposition does not warrant relief.

## FIRST STAGE ISSUES

■ Appellant argues in his fifth proposition that he was denied a fair trial by the State's improper introduction of other crimes evidence. Prior to trial the State filed a notice apprising Appellant that it would offer evidence that Appellant had a history of physically abusing his wife and that he had engaged in an extramarital affair. Appellant claims that this evidence did not tend to prove a motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident as is acceptable under *Burks v. State*, 594 P.2d 771 (Okl.Cr.1979), *rev'd on other grounds, Jones v. State*, 772 P.2d 922, 925 (Okl.Cr.1989). Rather, he contends that it served only to show that he was a philandering wife-beater. Accordingly, Appellant urges this Court to find that this evidence was inadmissible and should have been excluded.

The weight of previous jurisprudence goes against Appellant's argument that the evidence of his prior physical abuse against his wife was inadmissible. This Court recently held in a capital case where the defendant killed his wife that "[e]vidence of previous altercations between spouses is relevant to the issue of intent." *Hooker v. State*, 887 P.2d 1351, 1359 (Okl.Cr.1994), *cert. denied*, —— U.S. ——, 116 S.Ct. 164, 133 L.Ed.2d 106 (1995). In so finding, this Court relied upon prior cases which hold that in a marital homicide case evidence of ill feeling, threats or similar conduct by one spouse toward another is probative to show motive and/or intent. *See Cheney v. State*, 909 P.2d 74, 87 (Okl.Cr.1995); *Duvall v. State*, 825 P.2d 621, 626 (Okl.Cr.1991), *cert. denied*, 506 U.S. 878, 113 S.Ct. 224, 121 L.Ed.2d 161 (1992); *Holt v. State*, 774 P.2d 476, 478 (Okl. Cr.1989); *Lamb v. State*, 767 P.2d 887, 890 (Okl.Cr.1988); *Brown v. State*, 753 P.2d 908, 911 (Okl.Cr.1988). In keeping with this established precedent, we find that the evidence of Appellant's prior physical abuse of Jennifer was relevant to show motive and intent.

■ We disagree as well with the contention that the evidence of Appellant's extramarital affair should have been suppressed. During the course of this relationship, Appellant expressed to his girlfriend his intent to marry and have children with her. This was relevant to show Appellant's motive and intent.

Although the State did introduce evidence of crimes or bad acts other than those for which Appellant was being tried, this evidence fell within well recognized exceptions to the rule prohibiting the introduction of other crimes evidence. Further, we find that the probative value of this relevant evidence outweighed its prejudicial effect. Appellant's argument concerning other crimes evidence is without merit.

■ Appellant argues in proposition eight that the evidence was insufficient to support his conviction for First Degree Murder. The evidence introduced against Appellant at trial was both direct and circumstantial. Accordingly, the test to be applied in determining the sufficiency of the evidence is whether, when viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *Spuehler v. State*, 709 P.2d 202 (Okl.Cr.1985); *Paxton v. State*, 867 P.2d 1309, 1315–16 (Okl.Cr.1993), *cert. denied*, 513 U.S. 886, 115 S.Ct. 227, 130 L.Ed.2d 153 (1994). It is worthy of notation that the jury is the exclusive judge of the weight and credibility of the evidence. *Robedeaux v. State*, 866 P.2d 417, 429 (Okl.Cr.1993), *cert. denied*, 513 U.S. 833, 115 S.Ct. 110, 130 L.Ed.2d 57 (1994). Further, despite conflicts in the evidence, this Court will not disturb the jury's verdict if there is competent evidence to support it. *Id.*

■ Appellant acknowledges that the only element of first degree murder which was contested was the element of malice aforethought. He claims that the State's

evidence did not prove this element beyond a reasonable doubt. The evidence that Appellant stabbed his wife and the boys multiple times and then squeezed the girls to death before placing their bodies in various closets and under a bed is sufficient to support the jury's conclusion that Appellant acted with malice aforethought. Further the conclusion that Appellant intended his victims to die finds support in his confession wherein he acknowledged that two of the victims were still alive when he checked on them later but he declined to call for help in an effort to save their lives. We find from these facts and circumstances surrounding the killing that the jury could have found beyond a reasonable doubt that Appellant killed the victims with malice aforethought.

## ISSUES RELEVANT TO BOTH STAGES OF TRIAL

■ Appellant complains in his fourth proposition that his constitutional rights to due process, a fair trial and a fair and reliable sentencing hearing were violated by the admission into evidence of highly prejudicial and inflammatory color photographs. The six photographs complained of on appeal depict the bodies of the victims in advanced stages of decomposition. The photographs reveal skin slippage and skeletonization as well as maggot activity. The decomposition of the bodies was so extensive that the victims could not be identified by their appearance. Appellant argues that because facts concerning the location and condition of the bodies were not disputed at trial, the probative value of the photographs was outweighed by their prejudicial impact.

■ Decisions regarding the introduction of photographs are within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *Hooks v. State*, 862 P.2d 1273, 1280 (Okl.Cr. 1993), *cert. denied*, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 490 (1994). Photographs which are gruesome or inflammatory may be admissible where their probative value is not substantially outweighed by the danger of unfair prejudice. *McCormick v. State*, 845 P.2d 896, 898 (Okl.Cr.1993). It is well established that "photographs of murder victims

can be probative in many respects.... They can show the nature, extent and location of wounds, establish the corpus delicti, corroborate testimony of medical examiners and expert witnesses and depict the crime scene." *Smallwood v. State*, 907 P.2d 217, 228 (Okl. Cr.1995). Further, "Appellant's willingness to concede that there is no dispute over the identity of the victim or the injuries sustained is not determinative of the photographs' admissibility." *Id.*

The photographs at issue in the present case are gruesome. However, they also accurately depict the crime scene and corroborate the testimony of the medical examiner and Appellant's confession. We find that this probative value is not substantially outweighed by the prejudicial impact. Accordingly, we cannot find that the trial court abused its discretion in admitting these photographs into evidence.

■ It is Appellant's argument in his sixth assignment of error that pervasive prosecutorial misconduct deprived him of a fair trial and reliable sentencing. Appellant cites to numerous instances during both stages of trial in which he contends the prosecutors exceeded the bounds of proper prosecutorial advocacy. He claims that the prosecutors unfairly attacked defense expert witnesses, appealed to the passions of the jurors, improperly presented evidence that Appellant had invoked his right to counsel, made reference to facts not in evidence, misstated the law, engaged in name calling, and voiced personal opinions. Most of the comments complained of were not objected to at trial. Accordingly, as to these remarks, all but plain error has been waived. *Freeman v. State*, 876 P.2d 283, 287 (Okl.Cr.), *cert. denied*, 513 U.S. 1022, 115 S.Ct. 590, 130 L.Ed.2d 503 (1994).

■ Our review of the record reveals that many of the comments not met with timely objection fell within the prosecutors' wide range of permissible argument. None were so egregious as to have risen to the level of reversible error. The record also reflects that of the few comments at issue which were objected to, some of these objections were sustained. Where the trial court

admonished the jury to disregard the improper statement the error was cured. *See Romano v. State,* 909 P.2d 92, 116 (Okl.Cr. 1995). Where no admonishment was given or requested, review, again, is limited to plain error. *Id.* In no instance where this occurred did the comment rise to the level of plain error. "Allegations of prosecutorial misconduct do not warrant reversal of a conviction unless the cumulative effect was such to deprive the defendant of a fair trial." *Duckett v. State,* 919 P.2d 7, 19 (Okl.Cr.1995). Because we do not find that the inappropriate comments deprived Appellant of a fair trial, affecting the jury's finding of guilt or assessment of the death penalty, we decline to grant relief on this proposition.

## FIRST STAGE JURY INSTRUCTIONS

In his seventh proposition Appellant argues the trial court erred in failing to adequately instruct the jury on lesser included offenses and defenses which he claims were supported by the evidence. The record reveals that defense counsel failed to request most of the instructions he now claims were warranted. This Court has held that "where the evidence warrants a lesser included offense instruction a defendant is entitled to the same whether requested or not." *Boyd v. State,* 839 P.2d 1363, 1367 (Okl.Cr.1992), *cert. denied,* 509 U.S. 908, 113 S.Ct. 3005, 125 L.Ed.2d 697 (1993). However, we have also held that "[j]ury instructions on lesser included offenses or theories of defense need only be given when there is evidence in the record to support such instructions." *Powell v. State,* 906 P.2d 765, 778 (Okl.Cr.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1438, 134 L.Ed.2d 560 (1996).

■■■ Appellant first calls this Court's attention to the instructions regarding heat of passion manslaughter which were given by the trial court. He claims these instructions were constitutionally deficient under the Tenth Circuit's holdings in *United States v. Lofton,* 776 F.2d 918 (10th Cir.1985) and *Davis v. Maynard,* 869 F.2d 1401 (10th Cir. 1989), *cert. granted and judgment vacated on other grounds, Saffle v. Davis,* 494 U.S. 1050, 110 S.Ct. 1516, 108 L.Ed.2d 756 (1990), *on remand, Davis v. Maynard,* 911 F.2d 415 (10th Cir.1990).

In the case at bar Appellant did not deny having killed his wife and the children. Rather, his defense to the charge of first degree murder with malice aforethought was that he lacked the ability to form the intent required for first degree murder. The defense put on evidence that Appellant has low intelligence bordering on mental retardation. In addition, an expert witness for the defense testified that a near drowning incident suffered by Appellant as a child caused brain damage. There was testimony that this damage diminished his ability to control emotions such as irritation and rage. This, however, was not the evidence relied upon by the trial court for its decision to give the manslaughter instruction. That evidence was put on by the State in Appellant's video taped confession. During this confession, Appellant stated that when he told his wife that he was being laid off from his job, she thought that he was lying. She struck him so hard that he saw black for a few seconds. He said that "it went wild." They got into a fist fight and it got out of proportion. Before he knew it she grabbed a knife. He took it from her and "things went crazy." It was at this point that he stabbed his wife.

Under 21 O.S.1991, § 711(2), homicide is First Degree Manslaughter "[w]hen perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon...." We find that under the facts of this case, the heat of passion manslaughter instructions simply were not warranted by the evidence because the evidence regarding the brain dysfunction which may have affected Appellant's ability to control his rage does not negate his intent to kill. Although Appellant claims that he was unable to control his rage, this does not preclude the conclusion that at the time he killed his family he intended the logical results of his actions. Accordingly, whether the instructions on First Degree Manslaughter were sufficient under *Lofton* and *Davis* is not of consequence to this case because these instructions were not warranted by the evidence.

Any deficiency in these instructions is harmless.

■ Appellant's next argument concerns an instruction on First Degree Manslaughter which was not requested or given but which Appellant contends was required by the evidence. As Appellant points out, "this Court held that 21 O.S.1981, § 711(2), sets forth two ways in which the offense of first degree manslaughter may be committed: 1) when perpetrated without a design to effect death and in a heat of passion but in a cruel and unusual manner or 2) when perpetrated without a design to effect death by means of a dangerous weapon." *Camron v. State*, 829 P.2d 47, 51 (Okl.Cr.1992), *citing, Moody v. State*, 38 Okl.Cr. 23, 259 P. 159 (1927), and *Smith v. State*, 652 P.2d 303, 304 (Okl.Cr. 1982) *(overruled on other grounds)*. It is argued that the evidence supported an instruction on the type of first degree manslaughter which omits heat of passion as an element. This instruction, again, is only warranted if there is evidence that Appellant did not have a design to effect death. As was discussed above, the nature of Appellant's actions omits a reasonable inference that he did not have the intent to kill his victims. This instruction was not warranted.

■ Next, Appellant argues that the defense of unconsciousness or automatism was warranted by the evidence and should have been given despite the fact that such was not requested. Appellant directs this Court's attention to 21 O.S.1991, § 152(6) which exempts from culpability "[p]ersons who committed the act charged without being conscious thereof." This Court has addressed this defense in prior cases holding that automatism "may be used in situations where the otherwise criminal conduct of an individual is the result of an involuntary act which is completely beyond the individual's knowledge and control." *Sellers v. State*, 809 P.2d 676, 686 (Okl.Cr.), *cert. denied*, 502 U.S. 912, 112 S.Ct. 310, 116 L.Ed.2d 252 (1991). *See also, Jones v. State*, 648 P.2d 1251, 1258 (Okl.Cr.1982), *cert. denied*, 459 U.S. 1155, 103 S.Ct. 799, 74 L.Ed.2d 1002 (1983). In *Sellers*, the defendant had said that he could not remember killing his parents and a psychologist testified that if the defendant had killed his parents he did not realize what he was doing. *Sellers*, 809 P.2d at 686. This Court held that this evidence was not sufficient to warrant an instruction on automatism. *Id.* Similarly, in the present case, the evidence of Appellant's borderline mental retardation and brain damage was not sufficient to require an instruction on the defense of automatism.

■ Appellant next contends that the evidence warranted an instruction on second degree depraved mind murder. An instruction on this crime is warranted where the evidence supports a finding that the homicide was "perpetrated by an act imminently dangerous to another person and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual." [10] Appellant argues that the record in the present case supports his contention because his brain dysfunction could have caused him to act in a way that evinced a depraved mind in extreme disregard for human life but without the intention of killing any person in particular. We find this argument untenable. While the record may be found to support a finding that Appellant evinced a depraved mind in disregard for human life, it would take a quantum leap to find that the victims of his rage were chosen randomly. The trial court did not err in not giving an instruction on second degree murder.

■ Finally, Appellant argues that the trial court erred by giving the Uniform Jury Instruction on causation. This instruction informed the jury that:

> No person may be convicted of Murder in the First Degree unless his conduct caused the death of the person allegedly killed. A death is caused by conduct if the conduct is a substantial factor in bringing about the death and the conduct is dangerous and threatens or destroys life.[11]

---

10. 21 O.S.1991, § 701.8.

11. Original Record at 450; OUJI–CR 426.

Appellant contends this instruction should not have been given because there was no dispute regarding the cause of the victims' deaths. He argues that the jury could have misunderstood this instruction to be an alternative theory of first degree murder and believed that he could be found guilty of murder even absent a design to effect death. While it is true that the facts of this case did not require this instruction be given, we disagree with Appellant's argument that it may have misled the jury. The instructions, when read as a whole, accurately state the applicable law and preclude the possibility that the jury may have believed it appropriate to convict Appellant of first degree murder absent a finding of intent. This argument is without merit.

## SECOND STAGE ISSUES

■ Appellant argues in his ninth assignment of error that the trial court's second stage instructions inappropriately precluded the jury from giving due consideration to the mitigating effect of evidence of his brain dysfunction and borderline mental retardation. In support of his argument Appellant cites *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). In *Penry*, evidence was presented at trial that the defendant had been diagnosed as having organic brain damage and was mentally retarded. However, under the Texas sentencing scheme the jury was to answer three "special issues" which basically asked if they found the existence of aggravating circumstances. While the jury was instructed that it could consider all evidence submitted in both phases of trial in answering the special issue questions, they were not instructed to weigh the aggravating circumstances with the mitigating evidence. Although defense counsel argued that evidence of the defendant's mental condition was mitigating, the jury was not instructed that it could consider such evidence as mitigating and that it could take this mitigating evidence into consideration in imposing the defendant's sentence.

The Supreme Court acknowledged that evidence of the defendant's mental retardation and decreased ability to control his impulses

could have been found by a rational juror to have made the defendant less morally culpable than those persons who have no such impediments. *Id.* 492 U.S. at 322–23, 109 S.Ct. at 2949, 106 L.Ed.2d at 280–81. Further, it rejected the State's argument that the jury was able to adequately consider all of the mitigating evidence even without any jury instruction on mitigating evidence. *Id.* 492 U.S. at 322, 109 S.Ct. at 2949, 106 L.Ed.2d at 280. The Supreme Court held that:

> In this case, in the absence of instructions informing the jury that it could consider and give effect to the mitigating evidence of [defendant's] mental retardation and abused background by declining to impose the death penalty, we conclude that the jury was not provided with a vehicle for expressing its 'reasoned moral response' to that evidence in rendering its sentencing decision.

*Id.* 492 U.S. at 328, 109 S.Ct. at 2952, 106 L.Ed.2d at 284.

In the present case, the jury was not so restricted. The jury was instructed that "[m]itigating circumstances are those which, in fairness and mercy, may be considered as extenuating or reducing the degree of moral culpability or blame. The determination of what are mitigating circumstances is for you as jurors to resolve under the facts and circumstances of this case."[12] While the jury was not specifically instructed that evidence of Appellant's mental condition was mitigating, it was instructed that it could determine what it wanted to consider as mitigating evidence. Defense counsel argued the mitigating value of the evidence of Appellant's brain dysfunction and decreased mental ability to the jury in second stage and these instructions adequately provided the jury a vehicle for expressing its "reasoned moral response" to this evidence. Accordingly, this proposition warrants no relief.

The State alleged the existence of five aggravating circumstances with regard to each count of murder: 1) that each murder was especially heinous, atrocious or cruel; 2) that there existed a probability that Appel-

12. Original Record at 478; OUJI–CR 438.

lant would constitute a continuing threat to society; 3) that the murders were committed to avoid lawful arrest or prosecution; 4) that Appellant created a great risk of death to more than one person; and 5) that Appellant was previously convicted of a felony involving the use or threat of violence to a person. The jury found each of these alleged aggravators to exist with regard to the counts involving the children, and found all but the third, murder committed to avoid lawful arrest, with regard to the count involving Jennifer Smith. In his tenth proposition Appellant challenges the propriety and validity of these aggravating circumstances.

▆▆▆▆ Appellant argues first that the evidence did not support the jury's finding that each murder was especially heinous, atrocious or cruel because the facts indicate that unconsciousness, if not death, occurred quickly with each victim and there was no design to cause great suffering. We have held that "the heinous, atrocious or cruel aggravating circumstance requires a showing that torture or serious physical abuse preceded the victim's murder." *Hooks,* 862 P.2d at 1282. *See also, Stouffer v. State,* 742 P.2d 562, 563 (Okl.Cr.1987), *cert. denied,* 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988). It is necessary that the State prove beyond a reasonable doubt that the victims consciously suffered before death. "Absent evidence of conscious physical suffering of the victim prior to death, the required torture or serious physical abuse standard is not met." *Perry v. State,* 893 P.2d 521, 534 (Okl.Cr.1995), citing *Battenfield v. State,* 816 P.2d 555, 565 (Okl.Cr.1991), *cert. denied,* 503 U.S. 943, 112 S.Ct. 1491, 117 L.Ed.2d 632 (1992). Torture, for purposes of this aggravator, can also include evidence of extreme mental cruelty. *Hawkins v. State,* 891 P.2d 586, 597 (Okl. Cr.), *cert. denied,* —— U.S. ——, 116 S.Ct. 480, 133 L.Ed.2d 408 (1995).

The evidence of the circumstances surrounding the deaths of the victims in this case came from Appellant's confession and testimony of the medical examiner. Appellant's statements to the police indicate that Jennifer was fighting with him at the time he stabbed her. The children were all in the house when this occurred and the two boys

actually witnessed it as they attempted to protect their mother from Appellant. When this happened, Appellant started stabbing the two boys. When the two girls came down the hall Appellant squeezed them until they became unconscious and then died.

The medical examiner testified that Jennifer Smith was stabbed four times. Two of the stab wounds damaged muscular tissues and did not enter body cavities. The most severe stab wound severed an artery in her neck. This wound would have resulted in extensive bleeding. There was no testimony as to which stab wound was inflicted first or about how long she was conscious. The medical examiner was unable to determine with certainty the cause of death of the two girls. He found no stab wounds on their bodies and speculated that the cause of their deaths was some form of asphyxial injury. The medical examiner testified that he found that at least four stab wounds had been inflicted on Ladarian Carter. One stab wound was to the neck, one to the abdomen, and two to the chest region. He testified that any of these could have been fatal, but none would have killed the victim immediately. Glen Carter, Jr., was found to have been stabbed also. However, the decomposition of his body made it more difficult for the medical examiner to determine the extent of the stab wounds. He was able to identify one stab wound to the chest area and another possible stab wound to the abdomen.

This evidence does not indicate that death for any of these victims was instantaneous. The evidence is less clear as to how long each of the victims remained conscious. Even so, the evidence does support a finding that Jennifer Smith was conscious for at least part of her struggle with Appellant. The boys suffered consciously as they, too, were fighting with Appellant prior to their death as they tried to protect their mother. Further, the evidence that they witnessed the stabbing of their mother supports a finding of extreme mental cruelty. Although the circumstances surrounding the death of the girls are not as clearly established, the evidence is sufficient to sustain the heinous, atrocious or cruel circumstance for these two deaths because they would have been conscious for at least

part of the time that they were being squeezed to death.

Appellant also argues that the narrowed interpretation of the heinous, atrocious or cruel aggravating circumstance as is currently applied, is unconstitutionally vague. This Court has rejected this argument. *See Williamson v. State*, 812 P.2d 384, 407 (Okl.Cr. 1991), *cert. denied*, 503 U.S. 973, 112 S.Ct. 1592, 118 L.Ed.2d 308 (1992). We do not choose to hold differently now.

■ Appellant next argues that there was insufficient evidence to support the finding that the murders of the children were committed to avoid or prevent a lawful arrest or prosecution. This Court has held that, "[t]his aggravating circumstance, by definition, requires that there be a predicate crime, separate from the murder, for which the appellant seeks to avoid arrest or prosecution." *Barnett v. State*, 853 P.2d 226, 233 (Okl.Cr.1993). Appellant's intent to murder in order to avoid arrest or prosecution for the commission of this separate crime must often be inferred from circumstantial evidence. *McGregor v. State*, 885 P.2d 1366, 1385 (Okl.Cr.1994), *cert. denied*, —— U.S. ——, 116 S.Ct. 95, 133 L.Ed.2d 50 (1995).

In the present case, the murder of Jennifer Smith provides the predicate crime, separate from the murders of the children, from which Appellant can be found to have sought to avoid arrest. Appellant's confession provided evidence that the two boys saw him kill his wife and that the girls were also present in the house when he stabbed Jennifer. Evidence that Appellant cleaned the house and lied to relatives to cover for Jennifer's failure to keep appointments provides circumstantial evidence from which it can be inferred that Appellant was concerned with avoiding detection of these crimes. Because any of the children could have identified him as the person who killed their mother, it is reasonable to infer that he killed them to prevent this from happening.

Appellant also argues that this aggravating circumstance has been interpreted in such a way that it is unconstitutionally vague and overbroad. This Court has previously addressed this issue and found it to be without merit. *Braun v. State*, 909 P.2d 783, 798

(Okl.Cr.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1438, 134 L.Ed.2d 559 (1996). *See also, Castro v. State*, 844 P.2d 159, 175 (Okl. Cr.1992), *cert. denied*, 510 U.S. 844, 114 S.Ct. 135, 126 L.Ed.2d 98 (1993). Appellant has not persuaded us otherwise in this case.

Next, Appellant submits that the "great risk of death" aggravating circumstance is unconstitutionally vague and overbroad. He admits that this issue has been previously addressed and rejected. *See Braun*, 909 P.2d at 798. *See also, Cartwright v. Maynard*, 802 F.2d 1203, 1221–22 (10th Cir.1986), *Rev'd on other grounds on reh'g*, 822 F.2d 1477, *aff'd*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). However, Appellant asks this Court to reconsider this issue. We decline to do so at this time.

■ Appellant's next argument attacks the propriety of two aggravating circumstances, "prior violent felony conviction" and "continuing threat to society." He contends that error occurred because the jury relied upon the same evidence to find the existence of both of these aggravators. This was evidence of a prior conviction for assault and battery with a dangerous weapon arising from an incident in which Appellant repeatedly stabbed his girlfriend. Appellant recognizes that this Court has previously rejected this argument. *See Robedeaux*, 866 P.2d at 435; *Pickens v. State*, 850 P.2d 328, 336 (Okl.Cr.1993), *cert. denied*, 510 U.S. 1100, 114 S.Ct. 942, 127 L.Ed.2d 232 (1994). The record reflects that this was the only evidence used to support the "prior violent felony conviction" aggravating circumstance. However, despite Appellant's assertion to the contrary, we find evidence in the record other than this prior conviction which supports the "continuing threat to society" aggravating circumstance. This is the evidence of Appellant's history of physical abuse upon his wife and the evidence presented by Appellant's expert witnesses that he has diminished ability to control his rage. Accordingly, the evidence presented at trial was sufficient to support the jury's findings regarding both of these aggravating circumstances.

Appellant also argues that the "continuing threat to society" aggravating circumstance

is unconstitutional. He recognizes that this Court has repeatedly rejected constitutional attacks on this aggravating circumstance. *See Mitchell v. State,* 884 P.2d 1186, 1208 (Okl.Cr.1994), *cert. denied,* — U.S. —, 116 S.Ct. 95, 133 L.Ed.2d 50 (1995). However, he asks this Court to reconsider those decisions. We decline this request.

During the second stage of trial, the State introduced evidence of victim impact through the testimony of two witnesses, Marietta Love, Jennifer Smith's mother, and Glen Carter, Sr., the father of the four children who were killed. In his eleventh proposition Appellant raises several issues concerning the use of victim impact evidence in the second stage of trial.

▆▆ Appellant first argues that error occurred in the use of victim impact evidence at his trial because the State failed to follow statutory requirements in the presentation of such testimony. He contends that the relevant statutes provide that such evidence can only be introduced through the presentation of written statements, not through testimony. In support of this argument he directs this Court's attention to *Neill v. State,* 896 P.2d 537, 553 (Okl.Cr.1994), *cert. denied,* — U.S. —, 116 S.Ct. 791, 133 L.Ed.2d 740 (1996), for its recognition that 22 O.S.Supp.1992, §§ 984, 984.1 and 991a(C) provide guidance regarding the use of victim impact evidence. Title 22 O.S.Supp.1992, § 984.1(A) provides that "[a] victim, or a member of the immediate family of the victim, may present a written victim impact statement or, at the court's option, appear personally at the sentencing proceeding and present the statement orally." While this language makes reference to a written victim impact statement, it does not preclude the introduction of victim impact evidence through testimony. Further, this Court has specifically found that "the trial court may wish to consider whether a question-and-answer format may be a preferable method of controlling the way relevant victim impact evidence is presented to a jury."

*Cargle v. State,* 909 P.2d 806, 828 (Okl.Cr. 1995).

▆▆ Victim impact evidence is constitutionally acceptable unless "it is so unduly prejudicial that it renders the trial fundamentally unfair." *Payne v. Tennessee,* 501 U.S. 808, 825, 111 S.Ct. 2597, 2608, 115 L.Ed.2d 720, 735 (1991). Appellant argues that the victim impact evidence exceeded the bounds of propriety when Glen Carter, Sr. made a comment which did not fall within the bounds of proper victim impact evidence.[13] Appellant is correct in his assertion that this comment was inappropriate evidence of victim impact. However, it cannot be found to have been so unduly prejudicial as to have rendered the trial fundamentally unfair.

Appellant also argues that *Payne v. Tennessee* and Oklahoma's amended capital sentencing statute have opened the floodgates for the introduction of highly emotional and irrelevant evidence. It is his position that victim impact evidence has no place in Oklahoma's death penalty scheme as our statutes require a balancing test of aggravating circumstances and mitigation and victim impact evidence is relevant to neither. He argues that victim impact evidence operates as irrelevant, improper, highly charged, emotion evidence which is present in every capital case and has the same effect as an unconstitutionally broad aggravating circumstance. Appellant implores this Court to adopt specific guidelines to prevent this from becoming a "superaggravator." This Court recently addressed these concerns and proffered such guidelines in *Cargle,* 909 P.2d at 824–30 (Okl. Cr.1995).

▆▆ Finally, Appellant argues that error occurred in this case because the jury instructions did not address the victim impact evidence or its place in the sentencing decision. While it is true that the jury in this case was given no instructions regarding the victim impact statements, at the time of trial, such was not required. Although this Court recently promulgated an instruction to assist

---

**13.** Glen Carter stated, "What is the world coming to when we just let people in our society just come and kill and go to prison and let them out and they come back and do the same act. What it[sic] going to take? More people got to be victims to these crimes that are being committed? More people have to suffer day for day because they know their loved ones are gone." Trial Transcript X, at 32.

the jury in using victim impact evidence, we did so making clear that the instruction was to apply prospectively only. *Id.* at 828–29. In *Cargle*, as in the case at bar, a specific instruction on victim impact evidence was not given, nor was it found that the absence of such rendered the defendant's sentence unreliable. Accordingly, in the present case as in *Cargle*, the absence of such an instruction does not require reversal of the sentencing proceeding.

In his next proposition Appellant sets forth four arguments previously rejected by this Court in order to preserve such for appellate review. He first argues that error occurred because the instructions failed to inform the jury that its findings regarding the mitigating circumstances did not have to be unanimous. He acknowledges that this issue has previously been addressed by this Court and that on prior occasions relief has been denied. *See Harjo v. State*, 882 P.2d 1067, 1081 (Okl.Cr.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 2007, 131 L.Ed.2d 1007 (1995). *See also Bryson v. State*, 876 P.2d 240, 262 (Okl. Cr.1994), *cert. denied*, 513 U.S. 1090, 115 S.Ct. 752, 130 L.Ed.2d 651 (1995); *Pickens*, 850 P.2d at 339. Although Appellant asks this Court to reconsider this issue at this time, we decline to do so.

Appellant also argues that the instructions given to the jury on the issue of mitigation permitted the jurors to ignore mitigating evidence altogether, and seriously diminished the effect of the mitigating evidence presented in this case. Appellant advises this Court that the same or similar instructions to those given in the present case were upheld against this challenge in *Pickens*, 850 P.2d at 339. We decline to hold otherwise at this time.

█ Next, Appellant alleges that the trial court committed error when it failed to instruct the jurors that they could consider a sentence of life or life without parole even though they had found the existence of an aggravating circumstance. Such an instruction is not required and this Court has consistently rejected this argument. *See Valdez v. State*, 900 P.2d 363, 385 (Okl.Cr.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 425, 133 L.Ed.2d 341 (1995); *Bryson*, 876 P.2d at 262–

63; *Pickens*, 850 P.2d at 339; *Romano v. State*, 847 P.2d 368, 392 (Okl.Cr.1993), *aff'd*, *Romano v. Oklahoma*, 512 U.S. 1, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994). We will not now depart from this prior holding.

Finally, Appellant argues that the instructions regarding the manner in which the jury was to weigh aggravating circumstance set forth an improper burden of proof. Again, he acknowledges that this preponderance of the evidence standard has been repeatedly approved by this Court. *See Mitchell*, 884 P.2d at 1206. *See also Rojem v. State*, 753 P.2d 359, 370 (Okl.Cr.), *cert. denied*, 488 U.S. 900, 109 S.Ct. 249, 102 L.Ed.2d 238 (1988); *Brogie v. State*, 695 P.2d 538, 544 (Okl.Cr. 1985). Again, we decline to revisit this issue.

█ This Court has held that where there is no error present, there can be no accumulation of error. *Brecheen v. State*, 732 P.2d 889, 897 (Okl.Cr.1987), *cert. denied*, 485 U.S. 909, 108 S.Ct. 1085, 99 L.Ed.2d 244 (1988). However, when there have been numerous irregularities during the course of the trial that tend to prejudice the rights of the defendant, reversal will be required if the cumulative effect of all the errors was to deny the defendant a fair trial. *Bechtel v. State*, 738 P.2d 559, 561 (Okl.Cr.1987). While it can be found in the present case that there were a few irregularities during the course of the trial, even taken together, these cannot be found to have been so great as to have denied Appellant a fair trial. Accordingly, relief is not warranted.

## MANDATORY SENTENCE REVIEW

█ In accordance with our statutory duty, we must now determine whether the death sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor, and also whether the evidence supports the jury's finding of the alleged statutory aggravating circumstances. *See* 21 O.S.1991, § 701.13(C). We are satisfied that neither passion, prejudice nor any other arbitrary factor contributed to the jury's sentencing determination. After carefully reviewing the evidence presented, we also find that it supported the jury's finding of the aggravating circumstances.

Finding no error warranting reversal or modification, Appellant's Judgment and Sentence is **AFFIRMED.**

JOHNSON, P.J., CHAPEL, V.P.J., and LANE, J., concur.

LUMPKIN, J., concurs in results.

### ORDER GRANTING REQUEST FOR PUBLICATION

On December 6, 1996, this Court granted Appellant's request for rehearing in the above styled case. This order did not grant relief but clarified an issue discussed in the opinion previously handed down in this case on October 1, 1996. The Order Granting Rehearing was not published. Subsequently, on December 11, 1996, Appellant filed a Motion to Publish the Order Granting Rehearing reasoning that trial judges should have the benefit of this Court's discussion regarding requests for instructions on second degree murder which is contained therein.

Having examined Appellant's motion this Court finds that Appellant's request should be, and the same hereby is **GRANTED.** The Order Granting Rehearing issued in Appellant's case shall be released for publication.

### IT IS SO ORDERED.

**WITNESS OUR HANDS AND THE SEAL OF THIS COURT this 13th day of January, 1997.**

/s/ Charles S. Chapel
   CHARLES S. CHAPEL,
   Presiding Judge

/s/ Reta M. Strubhar
   RETA M. STRUBHAR,
   Vice Presiding Judge

/s/ Gary L. Lumpkin
   GARY L. LUMPKIN,
   Judge

/s/ James F. Lane
   JAMES F. LANE,
   Judge

/s/ Charles A. Johnson
   CHARLES A. JOHNSON,
   Judge

### ORDER GRANTING REHEARING

Petitioner, Roderick L. Smith, was convicted of five counts of First Degree Murder in the District Court of Oklahoma County, Case No. CF–93–3968. He was sentenced to death on each count. From this Judgment and Sentence Petitioner perfected a timely appeal to this Court. Oral argument was heard on May 8, 1996, and a decision was rendered in a published opinion handed down by this Court on October 1, 1996. *See Smith v. State,* 932 P.2d 521 (Okl.Cr.1996). Subsequently, Petitioner filed a Petition for Rehearing.

▇▇▇ Petitioner bases his request for rehearing upon the contention that the opinion is in conflict with authority not previously before this Court. *See Rules of the Court of Criminal Appeals,* 22 O.S.1991, Ch. 18, App., Rule 3.14(B)(1). Petitioner directs this Court's attention to that part of the opinion which addressed the issue of whether Petitioner was entitled to an instruction on second degree depraved mind murder. The opinion correctly noted that an instruction on this degree of murder is warranted where the evidence supports a finding that the homicide was "perpetrated by an act imminently dangerous to another person and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual." **See 21 O.S.1991, § 701.8.** However, the opinion went on to find that the facts did not warrant an instruction on this degree of murder because the Petitioner had not chosen his victims randomly. This analysis focused on the language "any particular individual" and construed it too narrowly, limiting its use to situations where a person's wrath is not directed against any particular person. While second degree depraved mind murder may still apply to such situations, it has not been limited to such situations. Convictions for second degree depraved mind murder have been upheld in cases where the victim was specifically targeted. *See Quilliams v. State,* 779 P.2d 990 (Okl.Cr.1989); *Dorsey v. State,* 739 P.2d 528 (Okl.Cr.1987); *Hall v. State,* 698 P.2d 33 (Okl.Cr.1985).

Allowing that this crime has been applied to situations where the accused may have

intended to harm the victim but did not intend to kill, we find that under the facts of the present case, Petitioner was still not entitled to such an instruction. Given the evidence presented at trial, the only reasonable inference is that Petitioner specifically targeted his victims and that he intended to kill them. Again, the trial court did not err in failing to instruct the jury on the crime of second degree depraved mind murder.

Finally, Petitioner asks this Court also to reconsider its ruling regarding whether Petitioner was entitled to manslaughter instructions. Again, Petitioner contends that the opinion is contrary to controlling authority. We have reviewed this allegation and have found that this issue was decided based upon appropriate controlling authority.

Accordingly, for the reasons discussed above regarding the second degree depraved mind murder instruction, we find that the Petition for Rehearing should be **GRANTED.** However, no relief is warranted.

**IT IS THEREFORE THE ORDER OF THIS COURT** that this Petition for Rehearing is **GRANTED** with no relief required. The Clerk of this court is directed to issue the mandate forthwith.

**IT IS SO ORDERED.**

**WITNESS OUR HANDS AND THE SEAL OF THIS COURT** this 6th day of December, 1996.

/s/ Charles A. Johnson
CHARLES A. JOHNSON,
Presiding Judge

/s/ Charles S. Chapel
CHARLES S. CHAPEL
Vice Presiding Judge

/s/ Gary L. Lumpkin
GARY L. LUMPKIN
Judge
Concur in Result

/s/ James F. Lane
JAMES F. LANE,
Judge

/s/ Reta M. Strubhar
RETA M. STRUBHAR,
Judge