Norman Lee NEWSTED, Petitioner,

v.

STATE of Oklahoma, Respondent.

No. PC–93–30.

Court of Criminal Appeals of Oklahoma.

Dec. 20, 1995.

Leanne Turner Burnett, and Madalene A.B. Witterholt, Crowe & Dunlevy, Oklahoma City, Patti J. Palmer, Heskett & Heskett, Pawhuska, Charles J. Kall, Stephen C. Rench, and Jon Bernhardt, Holme Roberts & Owen, L.L.C., Denver, Colorado, for Petitioner.

Susan Brimer Loving, Attorney General, A. Diane Blalock, Assistant Attorney General, Oklahoma City, for Respondent.

### OPINION AFFIRMING DENIAL OF POST–CONVICTION RELIEF

JOHNSON, Presiding Judge:

Petitioner, Norman Lee Newsted, appeals from an order of the District Court of Osage

County denying his application for post-conviction relief in Case No. CRF–84–26. Petitioner was convicted by a jury of one count of Murder in the First Degree and sentenced to death. This Court affirmed the Judgment and Sentence in *Newsted v. State*, 720 P.2d 734 (Okl.Cr.1986). The United States Supreme Court denied certiorari in *Newsted v. Oklahoma*, 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986). Thereafter, Petitioner filed his first application for post-conviction relief which was denied by the Osage County District Court on April 5, 1989. This Court affirmed the denial in an unpublished order dated December 11, 1990, filed in Case No. PC–89–427. The United States Supreme Court denied certiorari review on June 28, 1991. *Newsted v. Oklahoma*, 501 U.S. 1259, 111 S.Ct. 2913, 115 L.Ed.2d 1077 (1991). Petitioner is now before us on appeal from the district court's December 15, 1992, denial of

his "second" application for post-conviction relief.[1]

Petitioner presented twelve (12) claims of error to the District Court in his "second" application for post-conviction relief.[2] On appeal, petitioner technically only lists three propositions of error:

1. The District Court erred when it failed to reach the merits of the claims made in Newsted's First Amended Supplemental Application for Post–Conviction Relief;

2. The District Court erred when it failed to vacate Newsted's sentence of death on the basis of the fundamental errors raised in Newsted's First Amended Supplemental Application for Post–Conviction Relief; and

3. The District Court erred when it failed to reverse Newsted's conviction on the

---

1. Petitioner's second application for post-conviction relief was titled First Amended Supplemental Application for Post–Conviction Relief.

2. The twelve assignments of error in petitioner's second application for post-conviction relief consisted of the following:
 A. Violation of federal due process and of the rule of *Brady v. Maryland* by the State's suppression of evidence that the knife was found open;
 B. Violation of the eighth amendment and the due process clause of the fourteenth amendment to the United States Constitution, and of Oklahoma law, by the trial court's failure to instruct on a lesser included offense supported by the evidence;
 C. Violation of the eighth amendment and the due process clause of the fourteenth amendment to the United States Constitution, and of Oklahoma law, by the trial court's improper instructions that (1) told the jury not to consider a lesser included offense unless it first had a reasonable doubt as to first degree murder; (2) failed to include a culpable mental state as an element of felony murder; and (3) failed to instruct the jury that the State had to prove intent beyond a reasonable doubt;
 D. Ineffective assistance of trial counsel at the guilt/innocence phase of the trial;
 E. Violation of the eighth amendment and the due process clause of the fourteenth amendment to the United States Constitution, and of Oklahoma law, by the State's failure to provide adequate notice of evidence it used during sentencing hearing;

 F. Violation of federal due process and of the rule of *Brady v. Maryland* by the State's failure to disclose statements relating to the Utah homicides;
 G. Violation of the eighth amendment and the due process clause of the fourteenth amendment to the United States Constitution, and the rule of *Mills v. Maryland* by improperly instructing the jury that it had to be unanimous as to what constituted mitigating evidence;
 H. Violation of the eighth amendment and the due process clause of the fourteenth amendment to the United States Constitution, and of the rule of *Caldwell v. Mississippi*, by the prosecutor's remarks to the jury giving his personal opinion and diluting the jury's sense of responsibility for its death penalty decision;
 I. Ineffective assistance of counsel at the sentencing hearing;
 J. Ineffective assistance of counsel on appeal;
 K. Violation of the eighth amendment and the equal protection and due process clauses of the fourteenth amendment to the United States Constitution by the State's failure to provide sufficient resources for Newsted in a capital case, compared to others similarly situated; and
 L. Violation of due process and the eighth amendment in that the totality of the circumstances under the claims listed above prevented Norman Newsted from receiving a fair trial and caused him to be unfairly and unconstitutionally sentenced to death.

basis of the fundamental errors raised in Newsted's First Amended Supplemental Application for Post–Conviction Relief.

These three assignments of error are followed by petitioner's written argument which is broken down into five sub-sections:

A. The entire sentencing hearing was permeated by fundamental error;

B. Each of the individual new claims, alone, is a claim of fundamental error:

1. The Brady Claims (Claims A and F)

2. Jury Instruction Claims (Claims B and C)

3. Prosecutorial Misconduct Claim (Claim H);

C. The procedural default rule does not bar claims based on newly discovered evidence;

D. The procedural default rule does not bar reconsideration of claims affected by subsequent changes in the law; and

E. The procedural default rule does not bar meritorious claims that were not raised previously due to the ineffectiveness of prior counsel.

Each of the original twelve claims of error is contained within the argument portion of petitioner's brief. Thus, petitioner contests the district court's rulings on each of these claims. In order to avoid confusion, this opinion will address the twelve claims as they were designated in petitioner's "second" application for post-conviction relief. Petitioner's argument on appeal will be considered in our review of each claim.

■ The Post–Conviction Procedure Act outlines procedures for a defendant to challenge a conviction and sentence after relief has been denied on direct appeal. 22 O.S. 1991, §§ 1080–1088. However, the Act is not intended to provide additional appeals. *Stiles v. State,* 902 P.2d 1104, 1105 (Okl.Cr.

1995). *See also Castro v. State,* 880 P.2d 387, 388 (Okl.Cr.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 1375, 131 L.Ed.2d 229 (1995). Consequently, issues which were raised and decided on direct appeal are barred by *res judicata. Castro,* 880 P.2d at 388; *Fowler v. State,* 873 P.2d 1053, 1056 (Okl.Cr.), *cert. denied,* — U.S. ——, 115 S.Ct. 673, 130 L.Ed.2d 606 (1994). Issues which could have been raised on direct appeal but were not are waived. *Castro,* 880 P.2d at 388; *Fowler,* 873 P.2d at 1055–56. In the instant case, Claims G and K are clearly barred by common law principles of waiver or *res judicata* and need not be addressed again.

The remaining ten claims are technically waived or barred by *res judicata* but have been preserved under the theory of newly discovered evidence and/or ineffective assistance of counsel. We will begin by addressing petitioner's claims regarding newly discovered evidence as seven of the ten remaining claims hinge, at least in part, upon this issue. Claims A and F specifically contend the State wrongfully withheld exculpatory evidence. Claims D, E, I and J involve issues which have been previously addressed by this Court.[3] Petitioner submits these issues should be reconsidered in light of newly discovered evidence. Claim L involves petitioner's new contention that cumulative error requires his conviction and sentence be reversed.

■ In Claims A and F petitioner contends the State wrongfully withheld exculpatory evidence which was material to the case in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The United States Supreme Court in *Brady* held "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87, 83 S.Ct. at 1196–97, 10 L.Ed.2d at 218. This rule is violated

---

3. Claims D and I involve the issue of ineffective assistance of trial counsel. Claim J involves the issue of ineffective assistance of appellate coun-

sel. Claim E involves the State's failure to give adequate notice of the punishment stage evidence it intended to present.

when the prosecution fails to disclose evidence favorable to the accused and material to guilt or punishment. *State v. Munson*, 886 P.2d 999, 1002 (Okl.Cr.1994). "Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Sadler v. State*, 846 P.2d 377, 383 (Okl.Cr.1993) (*citing U.S. v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)).

Claim A specifically involves the State's failure to disclose (1) evidence that Sergeant Roy Hunt found the folding knife in the victim's taxi cab in an open position and (2) evidence that Officer G.V. Moreland found signs of a struggle at the scene.[4] Petitioner submits this evidence was material to the guilt/innocence stage of trial. Petitioner asserted at trial that he killed Larry Donnell Buckley in self-defense after Donnell attacked him with a knife.

 The district court denied this claim finding this evidence had been obvious, apparent and discoverable for the last eight years. We agree. Sergeant Hunt and Officer Moreland were endorsed as witnesses on the information in this case. Petitioner has failed to demonstrate why this evidence could not have been discovered with due diligence. *See Moore v. State*, 889 P.2d 1253, 1256 (Okl.Cr.), *cert. denied*, —— U.S. ——, 116 S.Ct. 215, 133 L.Ed.2d 146 (1995); *Hale v. State*, 807 P.2d 264, 268–69 (Okl.Cr.), *cert. denied*, 502 U.S. 902, 112 S.Ct. 280, 116 L.Ed.2d 231 (1991). Furthermore, upon review of the entire record, we find this evidence does not create a reasonable probability that the outcome of the trial would change. Sergeant Hunt merely testified at the evidentiary hearing that the knife might have been open. Officer Moreland's opinion regarding possible signs of a struggle merely discredits other evidence to the contrary. *See Smith v. State*, 826 P.2d 615, 617–18 (Okl.Cr.), *cert. denied*, 506 U.S. 952, 113 S.Ct. 405, 121 L.Ed.2d 331 (1992). Thus, this claim of error fails.

Petitioner contends in Claim F that the State improperly suppressed three statements given by Cynthia Brosemer[5] and an allegedly unconstitutional "midnight" statement given by petitioner the night he was arrested.[6] Petitioner submits this evidence was material to the punishment stage of trial. During the penalty phase of trial in this case, Brosemer was called to testify regarding the Utah offenses. Because the defense was unaware of Brosemer's statements, petitioner submits the State was able to improperly imply that petitioner actually fired the fatal shots in Utah. Had Brosemer's statements been disclosed, petitioner contends the defense could have established he was not the "triggerman." Petitioner submits his "midnight" statement was also material because the testimony regarding this statement was the only corroboration offered for accomplice Brosemer's testimony.[7] Thus, petitioner maintains Brosemer's testimony would not have been admissible without this corroboration.

 The district court denied this claim finding this evidence had been obvious, ap-

---

4. Officer Moreland's opinion regarding possible signs of a struggle was contained in a supplemental offense report which was prepared on February 21, 1984. This report was not provided to the defense.

5. The undisclosed statements dealt with a triple murder in Utah. Petitioner, along with Doug Kaye and Cynthia Brosemer, robbed a bar in Cedar City, Utah on February 14, 1984 (just six days prior to the murder in the present case). The three patrons in the bar were ultimately killed. At the time of petitioner's trial in Oklahoma petitioner had not been adjudicated on these offenses. Petitioner was later convicted in October 1985 by a Utah jury of felony murder and aggravated robbery.

6. Sergeant Houchen of the Cedar City Police Department in Utah took petitioner's statement on this occasion. Although petitioner was given his *Miranda* warnings, petitioner submits he asked for counsel on nine separate occasions.

7. The "midnight" statement additionally reflects petitioner was not the actual "triggerman" in Utah.

parent and discoverable for the last eight years. Regardless of whether this evidence was discoverable, we find the evidence does not create a reasonable probability that the outcome of the sentencing stage would have been different. *See Moore,* 889 P.2d at 1256–58. At trial, defense counsel effectively cross-examined Brosemer regarding the Utah murders. While her testimony was slightly confusing at times, Brosemer testified petitioner was not the actual "triggerman" who executed the three victims. Furthermore, petitioner's "midnight" statement was consistent with other statements given to the Tulsa police. We need not address petitioner's contention that Brosemer's testimony would have been rendered inadmissible without the testimony regarding petitioner's "midnight" statement as there was clearly other corroborating evidence.[8]

For the foregoing reasons, Claims A and F are denied. Furthermore, in light of this determination, we find Claims D, E and I are barred by *res judicata.* Each of these issues has previously been addressed by this Court. Petitioner's contention of newly discovered evidence does not resurrect them.[9] We further find Claim L is barred by the doctrine of waiver. Although Claim J hinges in part on the issue of newly discovered evidence, it will be addressed separately as it involves a claim of ineffective assistance of appellate counsel.

■ Recognizing that this Court has previously addressed the issue of ineffective assistance of appellate counsel, petitioner submits in Claim J that the issue must be reconsidered in light of the newly discovered evidence. Petitioner further contends appellate counsel was ineffective for failing to raise each of the new allegations of error contained in Claims A, B, C, F, H and L. As the newly discovered evidence was not found to be material, petitioner's prior claim of ineffective assistance of counsel need not be reconsidered. Thus, we will limit our review to petitioner's contention that appellate counsel was ineffective for his or her failure to raise the new allegations of error. If we find counsel was ineffective, the doctrines of waiver and *res judicata* will not apply to these issues. *Castro,* 880 P.2d at 388.

■ To prevail on a claim of ineffective assistance of counsel petitioner must show (1) counsel's representation fell below an objective standard of reasonableness and (2) a reasonable probability that, but for counsel's errors, the results of the proceedings would have been different. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). *See also Stiles,* 902 P.2d at 1107; *Sellers v. State,* 889 P.2d 895, 898 (Okl.Cr.), *cert. denied,* —— U.S. ——, 116 S.Ct. 214, 133 L.Ed.2d 146 (1995). While appellate counsel is required to raise relevant issues for this Court's review, counsel need not raise every non-frivolous issue. *Fowler v. State,* 896 P.2d 566, 569 (Okl.Cr.1995). Furthermore, when a claim of ineffective assistance of counsel can be disposed of through lack of prejudice this Court need not determine whether counsel's performance was deficient. *Castro,* 880 P.2d at 389.

■ Petitioner has clearly failed to demonstrate prejudice resulted from appellate counsel's failure to present Claims A and F as the newly discovered evidence addressed in these claims was not found to be material. We have further considered the issues presented in Claims B, C, H and L. Without addressing each on its merits, we find that none of them meet both requirements of *Strickland.* Consequently, appellate counsel

---

8. Sergeant Houchen's testimony regarding his investigation of the Utah murders corroborated Brosemer's testimony.

9. In addition to his contention that these issues should be reconsidered in light of the newly discovered evidence, petitioner further submits Claim E should be addressed again due to an intervening change of law. Petitioner relies upon *Wilson v. State,* 756 P.2d 1240, 1244–46 (Okl.Cr.1988) to show the State failed to give proper notice of the evidence it intended to use during the penalty stage of trial. The *Wilson* opinion does not constitute a change in the law but rather re-states the requirements of 21 O.S. 1981, § 701.10.

was not ineffective in failing to raise these issues, and the issues are barred from further review. *Castro*, 880 P.2d at 388.

We have carefully considered the entire record before us on appeal, including petitioner's application and the District Court's findings of fact and conclusions of law, and find that petitioner is not entitled to relief. The order of the District Court denying post-conviction relief is **AFFIRMED.**

LANE and STRUBHAR, JJ., concur.

CHAPEL, V.P.J., and LUMPKIN, J., concur in result.

LUMPKIN, Judge, concurring in results:

I concur in the results reached by the Court in this case. However, this is the second application for Post–Conviction relief. I do not find any issues arising since December 11, 1990, the date this Court affirmed the denial of the first application of Post–Conviction relief. A regurgitation of issues which were raised on direct appeal or the first application for Post–Conviction relief should be summarily denied based on res judicata. Issues which could have been raised as a part of the direct appeal or first Post–Conviction relief application, but were not, are waived. The only potential issue to which Petitioner alludes for this Court to consider is the vague, unsupported generalization of *some* "prior counsel" at *some* stage of the proceeding failed to raise *some* issue, which could be interpreted to allege counsel on the first application for Post–Conviction relief failed to raise *some* issue. However, I fail to find any proposition of error in this record which survives the application of res judicata or procedural bar by waiver. This Court should further hold Petitioner has exhausted his state remedies as a part of its obligation to bring about finality to this conviction.