1998 OK CR 70

**Maximo Lee SALAZAR, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–96–1496.

Court of Criminal Appeals of Oklahoma.

Dec. 30, 1998.

Rehearing Denied Feb. 10, 1999.

Mark Barrett and Steven Hess, OK Indigent Defense System, Captal Trial Division, Norman, Oklahoma, for defendant.

Robert Schulte, District Attorney, Lawton, Oklahoma, for the state.

William H. Luker, Division Chief, Capital Direct Appeals Division, Norman, OK, for appellant.

W.A. Drew Edmondson, Attorney General of Oklahoma, Williams L. Humes, Assistant Attorney General, Oklahoma City, OK, for appellee.

## OPINION

JOHNSON, Judge.

¶ 1   Maximo Lee Salazar was tried by a jury and convicted of one count of First Degree Murder (21 O.S.Supp.1982, § 701.7(A)) and one count of First Degree Burglary (21 O.S.1981, § 1431) in the District Court of Comanche County, Case No. CRF–87–460.   The jury found the existence of three aggravating circumstances[1] and recommended death for the murder and ten (10) years imprisonment for the burglary.   In *Salazar v. State*, 1993 OK CR 21, 852 P.2d 729, this Court affirmed Appellant's convictions for murder and burglary, but vacated the sentence of death and remanded the case for resentencing.[2]

¶ 2   In November of 1994, a new sentencing proceeding was conducted before the Honorable Allen McCall.   *See* 21 O.S.Supp. 1993, § 701.10a. The jury again returned a sentence of death, but only found the existence of one aggravating circumstance—the defendant knowingly created a great risk of death to more than one person.   In *Salazar v. State*, 1996 OK CR 25, 919 P.2d 1120, this Court reversed and remanded the case for a third sentencing hearing finding the evidence was insufficient to support the sole aggravating factor on which the sentencer relied.

¶ 3   A third sentencing proceeding was conducted before the Honorable Allen McCall on October 28–31, 1996.   Finding the existence of two aggravating circumstances— the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution;  and Salazar posed a continuing threat to society—the jury again returned a sentence of death.   From this Judgment and Sentence, Salazar appeals.

¶ 4   The facts of this case are set out in detail in *Salazar*, 852 P.2d at 731–32.   In summary, this case involves the brutal stabbing murder of nine-year-old Jennifer Prill.

---

1. (1) the defendant knowingly created a great risk of death to more than one person; (2) the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution; and (3) the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society.

2. The Court found error occurred when the trial court failed to instruct the jury on the punishment option of life imprisonment without the possibility of parole.

On August 24, 1987, Salazar was burglarizing the Prill residence in Cache, Oklahoma. Jennifer awoke and found Salazar in the living room. Salazar instructed Jennifer to return to her bedroom where he followed her and fatally stabbed her twice in the neck. Thereafter, Salazar fled the house taking approximately six to eight dollars in cash and a set of car keys. Salazar was subsequently arrested a few weeks later and confessed to the murder.

## I. DOUBLE JEOPARDY

¶ 5  In his second proposition of error, Salazar contends his constitutional protections against double jeopardy and his rights to due process of law and a fair and reliable sentencing proceeding have been violated. Salazar maintains that all of the aggravating circumstances alleged against him in the first resentencing were rejected on the grounds of insufficient evidence. Under these circumstances, Salazar asserts his second resentencing violated his rights under the Fifth, Eighth and Fourteenth Amendments of the United States Constitution and Article II, Sections 7, 9 and 21 of the Oklahoma Constitution.

¶ 6  As previously discussed, the State alleged three aggravating circumstances at the first resentencing proceeding. The jury rejected two of the three aggravating circumstances, and based its verdict solely on the "great risk of death to more than one person" aggravator. On appeal, this Court found the evidence was insufficient to support this aggravator. In determining whether the matter could be remanded for yet another sentencing proceeding, this Court thoroughly addressed the Supreme Court's decision in *Poland v. Arizona*, 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986). The Court concluded:

> [T]hat if either the trial court or a reviewing court finds that, after removal of any infirm factors, the residual evidence offered by the state at the sentencing proceeding will not support a death sentence, then the defendant has been acquitted of the death penalty and jeopardy precludes any further sentencing proceedings seeking a death verdict. However, if there is

evidence which supports other statutory aggravating circumstances, the case may be remanded and a death verdict may be sought. Put simply, when there is evidence of aggravating circumstances in the record and error requires reversal, the slate is wiped clean and a defendant may be subjected to any punishment authorized by law including death.

*Salazar*, 919 P.2d at 1127 (footnote omitted). Finding evidence in the record to support both the "continuing threat" aggravator and the "avoid arrest or prosecution" aggravator, this Court remanded the case for a third sentencing proceeding.

¶ 7  While Salazar acknowledges this Court's ruling, he contends the Court's remand decision was contrary to our prior decisions in *Crawford v. State*, 1992 OK CR 62, 840 P.2d 627, 643; *Cheney v. State*, 1995 OK CR 72, 909 P.2d 74, 83; and *Perry v. State*, 1995 OK CR 20, 893 P.2d 521, 535–37. He further asserts the ruling violates his right to equal protection of the law. We disagree. The Court's analysis and application of *Poland* in *Salazar*, 919 P.2d at 1127, represents this Court's current position on this issue. Thus, Salazar's equal protection argument fails. *See Stafford v. State*, 1990 OK CR 74, 800 P.2d 738, 740–41, *cert. denied*, 499 U.S. 927, 111 S.Ct. 1328, 113 L.Ed.2d 260 (1991). Further review of Salazar's double jeopardy claim is barred by the doctrine of *res judicata*.

## II. JURY SELECTION

¶ 8  In his eighth proposition of error, Salazar contends the trial court committed reversible error when it refused to excuse prospective juror Francois for cause. During voir dire, juror Francois indicted that she could not consider the sentence of life with the possibility of parole. Upon further questioning by both the State and Salazar, juror Francois unequivocally stated on numerous occasions that she could consider all three punishment options. She further stated that she was not predisposed to any one punishment. Thereafter, defense counsel

passed juror Francois for cause.[3] Under these circumstances, this issue has not been properly preserved for appellate review. Moreover, Salazar has failed to demonstrate that the trial court abused its discretion when it refused to excuse jury Francois for cause. *See Lewis v. State*, 1978 OK CR 123, 586 P.2d 81, 82.

¶ 9 Salazar argues in his ninth proposition of error that the prosecutor failed to sufficiently demonstrate a neutral reason for his peremptory challenge against a minority juror, Eric Gilder. *See Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). To assert a *Batson* claim, a defendant must make a primia facie showing that the prosecutor exercised peremptory challenges on the basis of race. *Neill v. State*, 1994 OK CR 69, 896 P.2d 537, 546, *cert. denied*, 516 U.S. 1080, 116 S.Ct. 791, 133 L.Ed.2d 740 (1996). After this requisite showing has been made, the burden shifts to the prosecutor to articulate a race neutral explanation related to the case for striking the juror in question. *Neill*, 896 P.2d at 546. The trial court must then determine whether the defendant has carried his burden of proving purposeful discrimination. *Id.*

¶ 10 In response to juror Gilder's removal from the jury panel, defense counsel entered the following objection:

> Your Honor, the State has used two of it's (sic) three challenges to excuse minorities on the panel, there are only three recognizable minorities. We allege that it appears to be a pattern of excusing minorities from the jury panel and this is a violation—in violation of Mr. Salazar's rights....

The prosecutor responded to defense counsel's allegations by first explaining why he had removed juror Hines from the jury. He then explained that he had decided to remove juror Gilder because he was wearing "a gold tab earring in each ear," was approximately the same age as Salazar, and had been sleeping in the back of the courtroom during the

morning session. The trial court found that no pattern of excluding minorities had been shown. He further found the prosecution had articulated "valid reasons" for the dismissal of juror Gilder.

¶ 11 There will seldom be much evidence bearing on the issue of whether the prosecutor's race-neutral explanation for a peremptory challenged should be believed. *See Neill*, 896 P.2d at 547. The best evidence often will be the demeanor of the attorney who exercises the challenge. "[E]valuation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.'" *Neill*, 896 P.2d at 547 *quoting Hernandez v. New York*, 500 U.S. 352, 365, 111 S.Ct. 1859, 1869, 114 L.Ed.2d 395, 409 (1991). "The trial court's decision on the issue of discriminatory intent will not be overturned unless we are convinced that the determination is clearly erroneous." *Id.* Salazar has failed to demonstrate the trial court's ruling was erroneously made. Thus, this allegation of error is denied.

¶ 12 In his tenth proposition of error, Salazar submits he was denied a jury composed of a fair cross section of the community because of the operation of 38 O.S. 1991, § 28, which allows persons over the age of seventy to opt out of jury service. This Court has consistently rejected this argument. *See Le v. State*, 1997 OK CR 55, 947 P.2d 535, 545–46, *cert. denied*, ── U.S. ──, 118 S.Ct. 2329, 141 L.Ed.2d 702 (1998); *Bryan v. State*, 1997 OK CR 15, 935 P.2d 338, 365, *cert. denied*, ── U.S. ──, 118 S.Ct. 383, 139 L.Ed.2d 299 (1997). Salazar has failed to provide any compelling reason for this Court to revisit its prior decisions. This proposition of error fails.

### III. EVIDENCE

¶ 13 Salazar contends in his fourth proposition of error that his statements made to police on September 4, 6 and 8 of 1987 were

---

3. Some confusion later arose as to whether defense counsel had withdrawn his challenge for cause. As a result, defense counsel was given an opportunity to re-raise his challenge. The trial court denied counsel's challenge. The court stated, "Based on the Court's observations of the juror and the totality of her answers, I feel she can fairly consider all three punishment options."

inadmissible as they were not the product of a knowing and intelligent waiver. While he acknowledges this Court addressed the voluntariness of his September 6th and 8th confessions in *Salazar v. State*, 852 P.2d at 733–34, Salazar asserts the Court's decision did not address whether the State sufficiently demonstrated he was able to understand and knowingly and intelligently waive his rights in spite of his borderline low intelligence and retardation. We disagree.

¶ 14 In his original appeal of his 1988 conviction, Salazar argued "that his age and I.Q., combined with the interrogators' techniques and the attendant stress, rendered his [September 6, 1997] confession inadmissible." [4] *Salazar*, 852 P.2d at 733. After reviewing Salazar's characteristics (i.e. his youth and mental capabilities) and the details of the interrogation, the Court found the State had met its burden of proving by a preponderance of the evidence that the confession was obtained voluntarily. *Id.* Thereafter, the Court addressed whether trial counsel was ineffective for failing "to investigate and adequately utilize evidence of appellant's 'mental retardation' to attack the admissibility of his *confessions*." *Id.* at 734 (emphasis added). The Court found Salazar had failed "to prove the confessions would have been excluded had trial counsel presented evidence of the alleged mental retardation." *Id.*

¶ 15 Title 21, Section 701.10a(4) specifically provides "[a]ll exhibits and a transcript of all testimony and other evidence properly admitted in the prior trial and sentencing shall be admissible in the new sentencing proceeding...." *See also Humphreys v. State*, 1997 OK CR 59, 947 P.2d 565, 573, *cert. denied*, —— U.S. ——, 118 S.Ct. 2329, 141 L.Ed.2d 702 (1998). Consequently, this issue has already been resolved. This Court previously determined that Salazar's September 6th and 8th confessions were properly admitted during the first trial. Thus, these confessions were properly admitted in the present sentencing proceeding.

¶ 16 We further find Salazar's September 4th statement was properly admitted in the present sentencing hearing. Salazar did not confess to any crimes on September 4, 1987. Rather, he spoke to the police about the circumstances surrounding the alleged theft of his car. Salazar's sole contention is that his September 4th statement was inadmissible because of his borderline low intelligence and retardation. Upon a thorough review of the current record, we find Salazar's September 4th statement was the product of a knowing and intelligent waiver. *See Harjo v. State*, 1994 OK CR 47, 882 P.2d 1067, 1071, *cert. denied*, 514 U.S. 1131, 115 S.Ct. 2007, 131 L.Ed.2d 1007 (1995). This proposition of error is denied.

¶ 17 In his fifth proposition of error, Salazar submits the trial court erred in allowing into evidence post-mortem photographs of the victim, crime scene photographs and the medical examiner's report. He specifically attacks State's Exhibits 5, 6, 7, 8, 9, 9a, 11, 15, 16 and 17. Except for exhibit number 16 which was never introduced into evidence, Salazar entered a timely objection to each of the now challenged exhibits.

¶ 18 State's Exhibit 5 is a photograph of the victim's bloody bed. Exhibits 15 and 16 are photographs of the victim's upper body showing the stab wounds to her neck. Salazar argues these photographs were improperly admitted because: (1) they were not needed to prove the *corpus delicti* of the offense; (2) they were not relevant to prove any of the aggravating circumstances; and (3) they were introduced merely to inflame the jury. We disagree. The challenged photographs were relevant and probative as they corroborated and shed light on the circumstances surrounding the murder. In a resentencing proceeding, the new jury must be educated regarding the circumstances of the crime in order to make a well reasoned punishment determination. In the instant case, the circumstances of the murder were relevant to whether Salazar posed a "continuing threat" to society. *See Snow v. State*, 1994

---

4. Salazar did not directly attack the September 8th confession, but claimed it was the product of the first interrogation.

OK CR 39, 876 P.2d 291, 298, *cert. denied,* 513 U.S. 1179, 115 S.Ct. 1165, 130 L.Ed.2d 1120 (1995) (callous nature of a crime is relevant to the determination of whether a capital defendant poses a continuing threat to society).

¶ 19   State's Exhibit 17 is a copy of the medical examiner's report. Salazar asserts the admission of this report was error as it was cumulative to Dr. Robert Dix's testimony. He further maintains the report was more prejudicial than probative because it contained a gynecological drawing which illustrated areas of light bruising around the victim's labia. Upon review, we find no error.

¶ 20   Dr. Robert Dix briefly testified during the sentencing proceeding regarding "very faint bruising to one side of the labia." Dr. Dix stated in the medical report that the "faint crescentic discoloration at the margin of each of the labia majora . . . appear[ed] to be a natural pigmentation." The report further states that the victim's hymen was intact. No evidence was presented of any sexual contact in this case. Consequently, we find the medical examiner's report did not improperly mislead or confuse the jury.[5] *See* 12 O.S.1991, § 2403. Although portions of the report were cumulative to the medical examiner's testimony, Salazar has failed to show how he was prejudiced or deprived of a substantial right. *See* 12 O.S.1991, § 2104(A). *See also* 20 O .S.1991, § 3001.1. Any error in the admission of this report was clearly harmless.

¶ 21   Salazar next challenges, on grounds of relevancy, the introduction of Mr. Prill's keys (State's Exhibit 6), the knife found in his car (State's Exhibit 7), the knife sheath found in his car (State's Exhibit 8), the gun found in his car (State's Exhibit 9A) and a photograph of the stolen items taken from the Huddleston residence (State's Exhibit 11). The admission of Mr. Prill's keys explained how Salazar was initially connected to the murder. Although Salazar's guilt was not at issue in this proceeding, this evidence was relevant to educate the resentencing jury regarding the crime. The remaining items were relevant to the determination of whether Salazar posed a "continuing threat" to society.

¶ 22   Finally, Salazar asserts State's Exhibit 9, a motor vehicle theft report filled out by Officer Larry LaFrance, was improperly admitted into evidence. He contends this evidence was cumulative and violated 12 O.S.1991, § 2803(8)(a), (b), (c) and (d). We agree. Exhibit 9 is an investigative report prepared by law enforcement and does not fall within the public records exception to the hearsay rule. *See* 12 O.S.1991, § 2803(8). However, we find this error harmless beyond a reasonable doubt in this case as the report was merely cumulative to Officer LaFrance's testimony regarding the theft report.

¶ 23   Salazar's fifth proposition of error is denied.

## IV. VICTIM IMPACT EVIDENCE

¶ 24   Salazar maintains in his third proposition of error that the use of victim impact evidence at his sentencing proceeding violated his rights under the Eighth and Fourteenth Amendments of the United States Constitution and Article II, Sections 7 and 9 of the Oklahoma Constitution. Salazar first contends that much of the victim impact evidence fell outside the statutory guidelines. While arguably some of the victim impact testimony was admissible to show the emotional and psychological impact of the homicide on the family, and to show a brief glimpse of the life of the deceased, Salazar asserts the probative value of this evidence was outweighed by its prejudicial effect.

¶ 25   Title 22 O.S.Supp.1993, § 984 provides:

"Victim impact statements" means information about the financial, emotional, psychological, and physical effects of a violent crime on each victim and members of their immediate family, or person designated by the victim or by family members of the victim and includes information about the victim, circumstances surrounding the

---

**5.** In fact, the medical examiner's report would have resolved any confusion which may have arisen due to Dr. Dix's brief and unexplained testimony regarding genital bruising.

crime, the manner in which the crime was perpetrated, and the victim's opinion of a recommended sentence.

In *Cargle v. State*, 1995 OK CR 77, 909 P.2d 806, 828, *cert. denied*, 519 U.S. 831, 117 S.Ct. 100, 136 L.Ed.2d 54 (1996), this Court concluded that "victim impact evidence should be restricted to those unique characteristic which define the individual who has died, the contemporaneous and prospective circumstances surrounding that death, and how those circumstances have financially, emotionally, psychologically, and physically impacted on members of the victim's immediate family."

¶ 26   In the present case, the victim impact evidence was offered through the victim's parents, Gary and Linda Prill. Salazar challenges several portions of the Prills' testimony. At first glance, some portions of the challenged testimony appear problematic. However, when the victim impact testimony is read in its entirety and in context, it is clear no error occurred. The testimony demonstrated how the victim's death emotionally, psychologically and physically affected the victim's immediate family. *See Cargle*, 909 P.2d at 828. Moreover, the testimony properly provided the jury with a "quick glimpse" of the victim's personal characteristics. *See Parker v. State*, 1996 OK CR 19, 917 P.2d 980, 989, *cert. denied*, 519 U.S. 1096, 117 S.Ct. 777, 136 L.Ed.2d 721 (1997) ("[V]ictim impact evidence relating to the personal characteristics of the victim and the emotional impact of the crime on the victim's family is a relevant consideration of Oklahoma's capital sentencing juries.").

¶ 27   Salazar further asserts error occurred when Mr. and Ms. Prill were permitted to make a recommendation regarding punishment. In *Ledbetter v. State*, 1997 OK CR 5, 933 P.2d 880, 890–91, this Court held that victim impact recommendations for a death sentence are admissible.[6] However, the Court cautioned that "this evidence will be viewed ... with a heightened degree of scrutiny as we apply the probative-value-versus-prejudicial-effect analysis."

*Ledbetter*, 933 P.2d at 891. This evidence is limited to a simple and concise statement of the recommended sentence, without amplification. *Id.*

¶ 28   When given the opportunity to make a sentence recommendation, Mr. Prill simply stated, "I don't feel any remorse towards the defendant. I feel we should carry on with the death sentence." Ms. Prill stated, "I don't see that there's any other fitting end than death, the death sentence. The death sentence without benefit of judge and jury was what he gave freely to my child. I do not see that he can take from her and be entitled to keep his own." Applying the above analysis, we find nothing improper in Mr. Prill's brief sentence recommendation. We do find Ms. Prill's death penalty recommendation was over amplified. However, we find this error did not contribute to the sentence rendered in this case. The State's case in aggravation was strong. Moreover, the trial court properly instructed the jury on the use of victim impact evidence. Consequently, this allegation of error fails.

¶ 29   Salazar finally submits victim impact evidence operates as an irrelevant, improper, nonstatutory "superaggravator" that will always be present in every capital case. Salazar argues such evidence negates the narrowing function death penalty procedures are required to provide. This issue was addressed and rejected in *Cargle*, 909 P.2d at 826. *See also Mollett v. State*, 1997 OK CR 28, 939 P.2d 1, 12–13, *cert. denied*, —— U.S. ——, 118 S.Ct. 859, 139 L.Ed.2d 758 (1998). We are not persuaded to revisit this issue.

**V. PROSECUTORIAL MISCONDUCT**

¶ 30   In his seventh proposition of error, Salazar raises several specific allegations of prosecutorial misconduct. The majority of the challenged comments were not timely objected to at trial. Thus, as to these comments, Salazar has waived all but plain error. *See Hunt v. State*, 1990 OK CR 37, 793 P.2d 1366, 1368; *Quilliams v. State*, 1989

---

6.   Salazar acknowledges this Court's decision in *Ledbetter*, but he requests that we reexamine this

issue. We are not persuaded to revisit this issue.

OK CR 55, 779 P.2d 990, 992–93; *Harris v. State,* 1989 OK CR 34, 777 P.2d 1359, 1362. Upon careful review, we find no plain error occurred.

¶ 31 As to the remainder of this allegation, Salazar first contends the prosecutor improperly encroached upon the province of the jury by telling the jury that they had a duty to return a sentence of death. Salazar complains the prosecutor appealed to the "strengths" on the jury to work with those jurors who did not support the death penalty. This argument was met with an objection which was overruled by the trial court. Following Salazar's objection, the prosecutor continued:

> Work with those jurors. Go over the evidence and work to a fitting end. And in this case, that fitting end is the death penalty.

When read in its entirety and in context, the prosecutor was merely asking the stronger members of the jury to assist the other jurors as they reviewed the evidence. The prosecutor was also making a proper recommendation as to punishment. *See Paxton v. State,* 1993 OK CR 59, 867 P.2d 1309, 1330, *cert. denied,* 513 U.S. 886, 115 S.Ct. 227, 130 L.Ed.2d 153 (1994).

¶ 32 Salazar submits next that the prosecutor misstated the law by arguing that Salazar's good conduct in prison was not relevant to whether he constituted a continuing threat to society. During closing arguments, Salazar limited the scope of the term "society" to mean prison society. During the State's final closing argument, the prosecutor responded by limiting the term's scope to the community at large if Salazar were released.

¶ 33 The term "society" as used in the "continuing threat" aggravating circumstance is not limited to any segment of the population. *See Berget v. State,* 1991 OK CR 121, 824 P.2d 364, 374, *cert. denied,* 506 U.S. 841, 113 S.Ct. 124, 121 L.Ed.2d 79 (1992). Therefore, both parties attempted to improperly limit the scope of the term "society." We note, however, that evidence of good prison behavior is relevant mitigation evidence. *See Skipper v. South Carolina,* 476 U.S. 1, 5, 106 S.Ct. 1669, 1671, 90 L.Ed.2d 1 (1986). Consequently, a prosecutor must be very cautious when responding to a defendant's argument that he does not constitute a continuing threat to society because he is a model prisoner and does not pose a threat to the prison population. The State must avoid any argument that a defendant's good prison behavior is irrelevant in a capital sentencing proceeding. Moreover, the State must itself avoid improperly limiting the term "society" by informing the jury that the term is not limited to any particular segment of the population.

¶ 34 Upon review of the instant case, we find the prosecutor did improperly attempt to limit the term "society" as used in the "continuing threat" aggravating circumstance. However, any error in this regard was harmless as it did not affect the jury's verdict. The prosecutor never argued Salazar's good prison conduct was not relevant mitigation evidence. Moreover, the jury was properly instructed on the "continuing threat" aggravating circumstance, and the evidence supporting this aggravating circumstance was more than sufficient.

¶ 35 Finally, Salazar contends his trial counsel was ineffective for failing to object to the challenged comments. For an ineffective assistance of trial counsel claim to be valid a defendant "must show (1) counsel's representation fell below an objective standard of reasonableness and (2) the reasonable probability that, but for counsel's errors, the results of the proceedings would have been different." *Boyd v. State,* 1996 OK CR 12, 915 P.2d 922, 925, *cert. denied,* 519 U.S. 881, 117 S.Ct. 207, 136 L.Ed.2d 142 (1996). *See also Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Salazar has failed to demonstrate that any prejudice resulted. *See Newsted v. State,* 1995 OK CR 75, 908 P.2d 1388, 1393 ("[W]hen a claim of ineffective assistance of counsel can be disposed of through lack of prejudice this Court need not determine whether counsel's performance was deficient.").

¶ 36 Thus, having reviewed all the challenged comments, both individually and as a whole, we find no grounds for either reversal

or modification of Salazar's death sentence. This proposition of error is denied.

## VI. JURY INSTRUCTIONS

■ ¶ 37 In his first proposition of error, Salazar submits the trial court committed reversible error by refusing to specifically list mental retardation and good behavior in prison as mitigating circumstances. For the reasons stated in *Smith v. State*, 1996 OK CR 50, 932 P.2d 521, 534, *cert. denied,* — U.S. ——, 117 S.Ct. 2522, 138 L.Ed.2d 1023 (1997),[7] this allegation of error fails. The trial court listed six mitigating factors for the jury's consideration. Salazar's "mental/emotional disturbance" was specifically listed as a mitigating circumstance. The jury was also instructed that it could find other mitigating circumstances existed and consider those circumstances as well. Moreover, defense counsel argued the mitigating value of Salazar's alleged mental retardation and good prison behavior during closing arguments.

■ ¶ 38 Salazar contends in his sixth proposition of error that the trial court erred when it failed to instruct the jury further on the meaning of life without parole. During deliberations, the jury sent out a note to the trial court stating: "Life without Parole. Is there a chance or other reasons a person may get out of Prison?" The trial court brought the jurors back into the courtroom and responded, "The Court cannot answer that any further than what is already in the instructions. You have all the instructions that I can give you in this case, and you'll have to make your decision based solely on what you have at this point." Salazar submits the trial court's response rendered the sentencing proceeding unreliable. Without additional instructions or evidence, he contends defense could not correct or explain any misunderstanding or misapprehensions

the jury may have had regarding the sentence of life without parole.

■ ¶ 39 Although a jury may consider the possibility or absence of parole when determining what sentence to impose in a capital murder case, a trial judge is not required to explain the Oklahoma parole process to a jury. *See Mollett,* 939 P.2d at 11. *See also Mayes v. State,* 1994 OK CR 44, 887 P.2d 1288, 1318, *cert. denied,* 513 U.S. 1194, 115 S.Ct. 1260, 131 L.Ed.2d 140 (1995); *McCracken v. State,* 1994 OK CR 68, 887 P.2d 323, 334, *cert. denied,* 516 U.S. 859, 116 S.Ct. 166, 133 L.Ed.2d 108 (1995). "[T]he concept of parole is sufficiently clear to enable any rational juror to understand it without explaining it further." *Mayes,* 887 P.2d at 1318. Consequently, we find no error.[8]

■ ¶ 40 In his twelfth proposition of error, Salazar submits the trial court issued contradictory instructions on whether the jury could consider sympathy for the defendant when deciding whether to impose the death sentence. In Jury Instruction Number 7, the court instructed the jury, "You should not let sympathy, sentiment, or prejudice enter your deliberations...." Instruction Number 24 stated, "[E]xcept that in this part of the trial you may consider sympathy or sentiment for the defendant in deciding whether to impose the death sentence." Salazar contends the instructions may have confused the jury and precluded them from considering sympathy when determining if the death sentence should be invoked.

¶ 41 This Court has repeatedly rejected this issue in dual stage cases in which an "anti-sympathy" instruction has been incorporated into the penalty stage instructions. *See Ledbetter,* 933 P.2d at 899; *Brown v. State,* 1994 OK CR 12, 871 P.2d 56, 73, *cert. denied,* 513 U.S. 1003, 115 S.Ct. 517, 130 L.Ed.2d 423 (1994); *Fox v. State,* 1989 OK CR 51, 779 P.2d 562, *cert. denied,* 494 U.S.

---

7. The Court in *Smith* found the jury was not precluded from considering the mitigating effect of Smith's brain dysfunction and borderline mental retardation as the jury was instructed "it could determine what it wanted to consider as mitigating evidence."

8. In conjunction with this proposition of error, Salazar filed an "Application for Evidentiary Hearing on Extraneous Information Considered by Jury and Motion for New Trial" pursuant to Rule 2.1(A)(3), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (1995) and 12 O.S.1991, § 2606(B). Given the disposition of this issue, Salazar's motion for new trial and request for an evidentiary hearing are denied.

**328**

1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990). Although the instant case involves a single stage sentencing proceeding, we find the underlying rationale of the Court's prior rejections of this issue applicable to this case. *See Fox,* 779 P.2d at 574–75.

¶ 42 First, the jury was specifically instructed that "[m]itigating circumstances are those which, in fairness, sympathy, and mercy, may extenuate or reduce the degree of moral culpability or blame. The determination of what circumstances are mitigating is for you to resolve under the facts and circumstances of this case." Second, the court listed six potentially mitigating factors for the jury's consideration. Some of these factors encompassed aspects of Salazar which could not be appreciated unless an element of sympathy was allowed. Finally, the jury was specifically instructed, "Even if you find that the aggravating circumstances outweigh the mitigating circumstances, you may impose a sentence of imprisonment for life or imprisonment for life without parole." Based on these instructions, a reasonable jury would clearly understand it could consider sympathy and sentiment when determining whether to impose the penalty of death. The instructions as a whole fairly and accurately stated the applicable law. *See Cleary v. State,* 1997 OK CR 35, 942 P.2d 736, 745, *cert. denied,* —— U.S. ——, 118 S.Ct. 1528, 140 L.Ed.2d 679 (1998). This allegation of error fails.

■ ¶ 43 Salazar asserts in his thirteenth proposition of error that the instructions given to the jury regarding mitigating circumstances were worded in permissive rather than mandatory language. Thus, he submits the jury could have completely ignored mitigating circumstances if they chose to do so. We have repeatedly rejected this same argument. *See Mollett,* 939 P.2d at 14–15; *Ledbetter,* 933 P.2d at 899; *Pickens v. State,* 1993 OK CR 15, 850 P.2d 328, 339, *cert. denied,* 510 U.S. 1100, 114 S.Ct. 942, 127 L.Ed.2d 232 (1994). We do so here again.

## VII. GENERAL SENTENCING ISSUES

■ ¶ 44 In his eleventh proposition of error, Salazar challenges the application of the "continuing threat" aggravating circum-

stance to this case. Salazar contends this Court's interpretation of this aggravator has been so subjective and undefined that as a result the applicable jury instructions are not sufficient to narrow the jury's discretion by objective criteria. This issue is well settled by *stare decisis. See Toles v. State,* 1997 OK CR 45, 947 P.2d 180, 192, *cert. denied,* —— U.S. ——, 118 S.Ct. 2380, 141 L.Ed.2d 746 (1998); *Al–Mosawi v. State,* 1996 OK CR 59, 929 P.2d 270, 285, *cert. denied,* —— U.S. ——, 118 S.Ct. 145, 139 L.Ed.2d 92 (1997); *Malone v. State,* 1994 OK CR 43, 876 P.2d 707, 717–18.

¶ 45 Salazar further maintains the trial court's instructions regarding this aggravator failed to require the State to prove beyond a reasonable doubt that he was a continuing threat. Contrary to this assertion, Jury Instruction No. 15 specifically instructed the jury that the State must prove beyond a reasonable doubt the existence of this aggravator. Salazar's contention, however, centers on the second prong of the instruction which required the State to prove a "probability" that Salazar would continue to pose a threat to society in the future. Salazar utilizes this language to support the true crux of his allegation, that the "continuing threat" aggravating circumstance is unconstitutionally vague. As previously discussed, this Court has consistently found that the "continuing threat" aggravator is neither vague nor overbroad. *See Toles,* 947 P.2d at 192. We find no reason to revisit this issue.

■ ¶ 46 With regard to the "continuing threat" aggravator, Salazar finally contends the use of unadjudicated crimes in support of this aggravating circumstance violated due process and the prohibition against cruel and unusual punishments. In support of this aggravator, the State presented evidence of a Lawton convenience store burglary and the burglary of the Huddleston residence. This Court has upheld the use of unadjudicated crimes evidence to support the "continuing threat" aggravating circumstance. *See Cannon v. State,* 1998 OK CR 28, ¶ 5, 961 P.2d 838, 853; *Hooper v. State,* 1997 OK CR 64, 947 P.2d 1090, 1107, *cert. denied,* —— U.S. ——, 118 S.Ct. 2353, 141

L.Ed.2d 722 (1998). Moreover, we find the use of this evidence in this case was not unconstitutional.

¶ 47 Salazar submits in his fourteenth proposition of error that his sentence of death should be vacated as it constitutes cruel and unusual punishment. In support of this contention, Salazar contends there is a growing national consensus against the execution of the mentally retarded. He lists eleven states which have enacted laws prohibiting or restricting the execution of the retarded.[9] This Court is not persuaded by this argument at this time. In *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), the Supreme Court held that execution of the mentally retarded was not a per se violation of the Eighth Amendment. This issue is best left to the Legislature.

¶ 48 In his final proposition of error, Salazar asks this Court to consider the cumulative effect of the alleged errors and grant relief even if the individual errors do not, in themselves, justify such action. While a few irregularities did occur during this sentencing proceeding, even considered together, these errors were not so egregious or numerous as to have denied Salazar a fair sentencing trial. *See Smith v. State*, 1996 OK CR 50, 932 P.2d 521, 538, *cert. denied*, —— U.S. ——, 117 S.Ct. 2522, 138 L.Ed.2d 1023 (1997). This proposition of error is denied.

## VIII. MANDATORY SENTENCE REVIEW

¶ 49 In accordance with 21 O.S. 1991, § 701.13(C), we must determine (1) whether Salazar's sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; and (2) whether the evidence supports the jury's finding of aggravating circumstances as enumerated in 21 O.S.1991, § 701.12.

¶ 50 After careful consideration and review of the evidence which supports the aggravating circumstances, as well as the evidence which may be considered mitigating, this Court finds the sentence of death was factually substantiated and appropriate. We further find the sentence of death was not imposed under the influence of passion, prejudice or any other arbitrary factor.

¶ 51 Therefore, finding no error warranting reversal or modification, the Judgment and Sentence of the District Court of Comanche County is **AFFIRMED.**

CHAPEL, P.J., concurs in result.

STRUBHAR, V.P.J., concurs in result.

LUMPKIN, J., specially concurs.

LANE, J., concurs in result.

STRUBHAR, Vice Presiding Judge:
concurs in results.

¶ 1 I concur in results only for reason of *stare decisis*. I continue to believe that a trial court should provide a meaningful answer to questions from the jury when they ask about the meaning of life without parole.

LUMPKIN, Judge, specially concur.

¶ 1 I join in the Court's decision in this case and write to make a comment on two issues.

¶ 2 First, as to Proposition of Error XIV, the State in its brief correctly notes "that Defendant has failed in his argument to provide citations to caselaw of this Court or the United States Supreme Court in support of his contention that the execution of a retarded person is a per se violation of Oklahoma or federal law." (State's brief at 60–61). Rule 3.5(C)(5), *Rules of The Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (1998), provides "Failure to present relevant authority in compliance with these requirements will result in the issue being forfeited on appeal (citations omitted)". It should also be noted the record reveals the issue of whether or not Appellant is retarded is a disputed fact. It appears an evaluation in 1988 indicated Appellant has an I.Q. of 82, was of low but normal intelligence, and had no indication of neurological brain damage. (State's brief at Pg. 61). Appellant argues

---

9. These states include: Arkansas, Colorado, Georgia, Indiana, Kansas, Kentucky, Maryland, New Mexico, New York, Tennessee and Washington.

he was functioning at a retarded level of intelligence at the time of the offense. (Appellant's brief at Pg. 93) (Appellant's reply brief at Pg. 15). The verdict of the jury is supported by the evidence in this case.

¶ 3   In addition, it should be noted the criteria set out in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), for evaluating effectiveness of counsel has been further explained in *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Applying the *Lockhart* standard, the record is void of any evidence the trial was rendered unfair and the verdict rendered suspect or unreliable.

LANE, J., concurs in results.

¶ 1   I concur in results because of the treatment of victim impact evidence for the same reasons I stated in *Ledbetter v. State,* 933 P.2d 880, 902 (Okl.Cr.1997).